IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| The Ellen G. White Estate, Inc. | ) | |
| | ) | |
| | ) | |
| Plaintiff. | ) | COMPLAINT |
| | ) | |
| vs. | ) | Civil Action No: 8:12-cv-2448 |
| | ) | |
| Brendan P. Knudson | ) | |
| Webs, Inc., | ) | |
| HostGator.com, LLC, | ) | |
| Domains By Proxy, LLC, | ) | |
| PayPal, Inc., | ) | |
| Go Daddy Group, Inc., and | ) | |
| John Does 1-20, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **COMPLAINT**

Plaintiff, The Ellen G. White Estate, Inc., allege as follows:

### NATURE OF THE ACTION

1.  The Ellen G. White Estate (the "Plaintiff" or "Estate") is the custodial agent and copyright owner of the writings of Ellen G. White.  Ellen G. White was a co-founder of the Seventh-day Adventist Church ("SDA Church") and revered messenger of God.  During her lifetime (1827-1915), Ellen White was a prolific author.  Among her literary contributions are many published books and articles, as well as thousands of unpublished letters, diary and journal entries, sermons and notes that were unpublished during her lifetime.

2.   Incorporated in 1933, the Estate is heir to the ownership and control of all her writings. In fulfillment of its mission, over a span of many decades, the Estate organized, annotated, edited, copied and digitized her unpublished collection of more than 8,000 typewritten and handwritten documents (the documents unpublished during her lifetime are collectively identified as "EGW Protected Works" herein).   By 1990, the Estate had disseminated copies of the EGW Protected Works to private Estate archives around the world, which are open by appointment to scholars and researchers.  Under rules established by the Estate, the visiting public may copy and make further use of EGW Protected Works.  Further, as the culmination of decades of effort, the Estate additionally published nearly 25% of the EGW Protected Works in books entitled *Manuscript Releases* (Volumes 1-21).  The *Manuscript Releases* were published over the course of a decade (between 1981 and 1993) in printed form, and also collectively on CD-ROM.  These published works were registered with the U.S. Copyright Office by the Estate. *See* Exhibit 1.

3.   All the writings of Ellen G. White, inclusive of those works that were published during her lifetime and those works that were unpublished during her lifetime, are contained in an online database. The writings published during her lifetime have long been available to the general public.  The remainder are writings controlled by Plaintiff, based on the trust she established upon her death.  These works have been published in various ways by the Estate, and are stored on a password protected portion of a database dedicated to all her writings.  Thus, this database has a publicly accessible portion containing her works published during her lifetime, and a private portion dedicated to EGW Protected Works, unpublished during her lifetime, access to which is controlled by a copyrighted digital rights management system.  In this

Complaint, the database of all Ellen G. White writings, both published and unpublished during her lifetime, is referred to as the EGW Writings Database.  The EGW Writings Database also contains electronic mailing lists and other proprietary materials of Plaintiff.

4.  In addition to its copyright activity, the Estate has applied for and is the owner of the following trademarks registered with the US Patent and Trademark Office: Ellen G. White (Reg. No. 2620036), EGW (Reg. No. 1342547), E.G. White (Reg. No. 2731512), White Estate (Reg. No. 2690504) and Ellen White Visionary For Kids (Reg. No. 3500991).  *See* Exhibit 2.  These federally registered trademarks, along with the common law trademarks and service marks owned by the Plaintiff bearing the name Ellen G. White are collectively referred to herein as the "Estate's Trademarks."

5.   Upon information and belief, beginning in January, 2012  Defendant Brendan Paul Knudson ("Knudson"), a citizen of Australia and a resident of Australia and Armenia, commenced execution of a scheme planned with others over a period of time to unlawfully hack into the secure, password-protected portion of the EGW Writings Database that contains the EGW Protected Works, and to download and steal digital files belonging to the Plaintiff. Knudson did this intentionally, without authority, and with a plan to reproduce and sell the EGW Protected Works, and exploit the trademarks and goodwill of the Plaintiff.

6.   Upon information and belief, on or about March 20, 2012, Knudson purchased a number of subject specific and related domain names, including www.UnpublishedEllenWhite.com, from BudgetDomains.com, an entity affiliated with WildWestDomains.com, which resells wholesale domains to the public, and which is affiliated with Defendant GoDaddy Group, Inc. ("GoDaddy").

7. Upon information and belief, on or about March 20, 2012, Knudson pointed his Domain Name System ("DNS") records of specific and related domain names including www.UnpublishedEllenWhite.com onto the operations of Defendant HostGator.com, LLC ("HostGator.com").

8. Upon information and belief, to hide his true identity as an owner of the newly registered domain names, Knudson purchased domain privacy services from Defendant Domains By Proxy, LLC ("DBP").

9. Upon information and belief, to commence a scheme to distribute the stolen EGW Protected Works, Knudson purchased from Defendant Webs, Inc. ("Webs"), a web hosting service identified as www.egwletters.webs.com. Subsequently, Knudson posted the copies of selected portions of EGW Protected Works on Webs' servers, which upon information and belief is located in Silver Spring, Maryland.  Knudson also redirected visitors from www.unpublishedellenwhite.com to www.egwletters.webs.com.

10. Upon information and belief, Knudson accessed a credit card processing payment service purchased from Defendant PayPal ("PayPal") to enable him to begin processing credit card payments for purchases of EGW Protected Works from his website.  Under the pseudonym "SDAnonymous," Knudson began selling the stolen collections of EGW Protected Works, priced between $7.77 and $12.60 per volume or set of volumes. *See* Exhibit 3 at 15.

11. The infringement of Plaintiff's rights by Defendant Knudson is both intentional and egregious.  At least as early as 2006, Knudson contacted Plaintiff on a number of occasions and demanded copies of voluminous amounts of copyrighted works of Ellen G. White, a demand which  Plaintiff rejected. He was advised that these demands were far in excess of what was

allowed under the Plaintiff's established research agreement, which Knudson was provided. *See* Exhibit 6.  Nevertheless, over a five year period, ending in 2011, Knudson persisted in making repeated and excessive demands regarding access to the EGW Protected Works.  Having failed in his prior efforts, in 2012, Knudson began a deliberate effort to hack into the Plaintiff's secure website and steal a massive amount of EGW Protected Works from the EGW Writings Database, along with private digital files containing names and email addresses compiled by Plaintiff.

12.   As set forth below, Defendants' actions constitute a) willful copyright infringement in violation of the Copyright Act of 1976, as amended, 17 U.S.C. §101, *et seq*.; b) trademark infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. §1051, *et seq*.; c) circumvention of technological measures in violation of the Digital Millennium Copyright Act of 1998, 17 U.S.C. § 1201, *et seq*. (the "DMCA"); d) violation of the Computer Fraud & Abuse Act, 18 U.S.C. § 1030, *et seq*. (the "CFAA"); e) violation of the Stored Communications Act, 18 U.S.C. § 2701 (the "SCA"); f) violation of the Anti-cybersquatting Consumer Protection Act, 15 U.S.C. § 1125, *et seq*. (the "ACPA"); and g) trademark infringement and  unjust enrichment under the common law of Maryland.

13.   By this action, Plaintiff seeks redress for Defendants' infringement of its copyrights and trademarks and violations of other federal and state laws, and damages and injunctive relief as allowed thereunder.

<u>THE PARTIES</u>

14.   Plaintiff is a California non-stock corporation organized in 1933 to act as the custodian and owner of the writings of Ellen G. White.  The Estate is located in Silver Spring, Maryland at 12501 Old Columbia Pike, Silver Spring, Md. 20904.

15.    Upon information and belief, Defendant Knudson is a citizen and resident of Australia and a resident of Armenia. He is an owner of domain names www.unpublishedellenwhite.com, www.ellenwhiteletters.com, and www.ellenwhitemanuscripts.com ("Knudson Domains") and a website www.egwletters.webs.com ("Knudson's Website").  Upon information and belief Knudson, alone and in conspiracy with Defendants John Does 1-20, engaged in planning and implementing a computer hacking scheme, theft of copyrighted materials, trademark infringement and copying and distribution of the EGW Protected Works.

16.    Upon information and belief, Defendant GoDaddy is an Arizona company in the business of webhosting solutions and domain registration. Upon information and belief, GoDaddy is an entity affiliated with WildWestDomains.com, which also resells wholesale GoDaddy domains to the public. Thus, through WildWestDomains, GoDaddy has granted Knudson cybersquatting domain name registrations in violation of Plaintiff's incontestable trademark rights.  Following notification by Plaintiff to GoDaddy on August 8, 2012 pursuant to 17 U.S.C. §512 of the Copyright Act as Amended (hereinafter  "DMCA Notification"), GoDaddy advised Plaintiff on August 10, 2012, that it had no control over content on the websites and that any issues regarding content had to be addressed to the owner of the website.

17.    Upon information and belief, Defendant Webs is a Maryland corporation in the business of website building and webhosting solutions.  Upon information and belief, Webs hosts Knudson's Website www.egwletters.webs.com, and thus Webs holds digital copies of the infringing materials and facilitates direct infringement of Plaintiff's copyrighted works. Following DMCA Notification by Plaintiff to Webs on August 7, 2012, on August 8, 2012, Webs advised Plaintiff that Webs was suspending the site for copyright infringement.

18.     Upon information and belief, HostGator.com is a Texas corporation in the business of webhosting solutions and domain registration.  Upon information and belief, HostGator.com also hosts Knudson Domains.  Thus, HostGator.com has granted Knudson cybersquatting domain name registrations in violation of Plaintiff's incontestable trademark rights.  Following DMCA Notification by Plaintiff to HostGator.com and counter notification by Defendant Knudson, HostGator.com advised Plaintiff on August 9, 2012, that it would temporarily block access to Knudson Domains, subject to the filing of legal action within ten (10) business days. Plaintiff was also advised that Defendant Knudson, being located outside the United States, consented to jurisdiction in any judicial district in which HostGator.com may be found.  *See* Exhibit 4 at 4.

19.     Upon information and belief, Defendant DBP is an Arizona corporation owned or controlled by Defendant GoDaddy and in the business of providing domain privacy services. Upon information and belief, DBP maintains Knudson's ownership of the Knudson Domains as private and confidential.  Therefore, DBP is assisting Knudson's scheme in confusing the public as to the true nature of Knudson's and his conspirators', Defendants John Does 1-20's, infringing conduct.  The Plaintiff's DMCA Notification to DBP was included within the Plaintiff's DMCA Notification to GoDaddy.

20.     Upon information and belief, Defendant PayPal is a California corporation in the business of collecting and disbursing payments and money transfers made through the Internet. Upon information and belief, PayPal processes credit card payments for Knudson's Website, www.egwletters.webs.com, including transactions involving sale of Plaintiff's copyrighted works.  As a result, PayPal facilitates the illegal sale of EGW Protected Works and is vicariously liable therefore.  Following DMCA Notification by Plaintiff to PayPal on August 8, 2012,

Plaintiff was advised by PayPal on August 10, 2012 that following its own investigation, it will not take any action because the reported websites are offline.

21.     Upon information and belief, Defendants John Does 1-20 are unidentified persons who have assisted Knudson in developing and/or implementing strategies and practices that enabled him to hack into the EGW Writings Database and steal Plaintiff's copyrighted and proprietary files. Therefore, Defendants John Does 1-20 are co-conspirators with Defendant Knudson in the actions complained of herein.

<u>JURISDICTION AND VENUE</u>

22.     This is a civil action seeking monetary, declaratory and injunctive relief for trademark infringement under the Lanham Act, 15 U.S.C. §1051, *et. seq*.; for copyright infringement under the Copyright Act of 1976, as amended, 17 U.S.C. §101, *et. seq*.; for circumvention of technological measures in violation of the DMCA; for violation of the CFAA; for violation of the SCA; for trademark infringement in violation of the ACPA; and for violation of the laws of the State of Maryland, Md. Code Com. Law, §13-301, *et. seq*., governing common law trademark rights and unfair competition occurring in the State of Maryland.

23.     Upon information and belief, this court has personal jurisdiction over Knudson, pursuant to the laws of the State of Maryland, including under Maryland's long arm statute, Md. Cts & Jud. Proc. Code Ann. §6-103(b)(1)–(4), as a result of his contacts with the forum by including transacting business in the state, contracting to supply and sell goods in the state, deriving substantial revenue from goods used or consumed in the state, causing tortious injury in the state by act or omission in the state, and by causing tortious injury within or outside of the state by act or omission outside the state. Moreover, pursuant to the counter notification sent to

Host.Gator.com in response to Plaintiffs' DMCA Notification to Host.Gator.com, Defendant

Knudson consented to jurisdiction anywhere Defendant Host.Gator.com can be found.

24. Upon information and belief, this court has personal jurisdiction over Webs, because it

resides in the State of Maryland, and because it has a principal place of business in Silver Spring,

Maryland.

25.   Upon information and belief, this court has personal jurisdiction over HostGator.com

pursuant to the laws of the State of Maryland, including under Maryland's long arm statute, Md.

Cts & Jud. Proc. Code Ann. §6-103(b)(1)–(4), as a result of contacts with the forum by

HostGator.com and/or its agents, including transacting  business in the state, contracting to

supply and sell goods in the state, deriving substantial revenue from goods used or consumed in

the state, causing tortious injury in the state by act or omission in the state, and in view of

HostGator.com's regularly doing and soliciting business in the state and/or its deriving

substantial revenue from goods used or consumed in the state, and by causing tortious injury

within or outside of the state by act or omission outside the state.

26.   Upon information and belief, this court has personal jurisdiction over DBP pursuant to

the laws of the State of Maryland, including under Maryland's long arm statute, Md. Cts & Jud.

Proc. Code Ann. §6-103(b)(1)–(4), as a result of contacts with the forum by DBP and/or its

agents, including transacting business in the state, contracting to supply and sell goods in the

state, deriving substantial revenue from goods used or consumed in the state, causing tortious

injury in the state by act or omission in the state, and in view of DBP's regularly doing and

soliciting business in the state and/or its deriving substantial revenue from goods used or

consumed in the state, and by causing tortious injury within or outside of the state by act or omission outside the state.

27.    Upon information and belief, this court has personal jurisdiction over PayPal pursuant to the laws of the State of Maryland, including under Maryland's long arm statute, Md. Cts & Jud. Proc. Code Ann. §6-103(b)(1)–(4), as a result of contacts with the forum by PayPal and/or its agents, including transacting business in the state, contracting to supply and sell goods in the state, deriving substantial revenue from goods used or consumed in the state, causing tortious injury in the state by act or omission in the state, and in view of PayPal's regularly doing and soliciting business in the state and/or its deriving substantial revenue from goods used or consumed in the state, and by causing tortious injury within or outside of the state by act or omission outside the state.

28. Upon information and belief, this court has personal jurisdiction over GoDaddy pursuant to the laws of the State of Maryland, including under Maryland's long arm statute, Md. Cts & Jud. Proc. Code Ann. §6-103(b)(1)–(4), as a result of contacts with the forum by GoDaddy and/or its agents, including transacting business in the state, contracting to supply and sell goods in the state, deriving substantial revenue from goods used or consumed in the state, causing tortious injury in the state by act or omission in the state, and in view of GoDaddy's regularly doing and soliciting business in the state and/or its deriving substantial revenue from goods used or consumed in the state, and by causing tortious injury within or outside of the state by act or omission outside the state.

29.    Upon information and belief, this court has personal jurisdiction over John Does 1-20 pursuant to the laws of the State of Maryland, including under Maryland's long arm statute, Md.

Cts & Jud. Proc. Code Ann. §6-103(b)(1)–(4), as a result of contacts with the forum by John

Does 1-20 and/or their agents, including assisting Knudson in circumventing the technology used

in connection with the EGW Writings Database that control access to the EGW Protected Works,

trafficking in technology, products, services, devices, components or parts thereof, all for the

purpose of infringing Plaintiff's copyrights and otherwise causing injury in the state by act or

omission in the state, and/or deriving substantial revenue from such activities, and by causing

tortious injury within or outside of the state by act or omission outside the state.

30.    This court has subject matter jurisdiction to hear Plaintiff's copyright, trademark

infringement, trademark counterfeiting and unfair competition claims under 17 U.S.C. §101 *et*

*seq*.; 15 U.S.C. §1125(a); and 28 U.S.C. §§1331 and 1338.

31.    This Court has supplemental jurisdiction over the related state law claims asserted

herein pursuant to 28 U.S.C. §1367.

32.    Venue of this action is proper pursuant to 28 U.S.C. §§ 1400(a) and 1391(b).

<u>FACTS</u>

**Ellen G. White's Literary Legacy**

33.    Ellen Gould (Harmon) White (1827–1915), co-founder of the Seventh-day Adventist

("SDA") Church, was a writer, lecturer, and counselor to the SDA Church, who possessed what

Seventh-day Adventists have accepted as the prophetic gift described in the Bible.

34.    The Seventh-day Adventists ("SDA") are a worldwide Christian faith community

numbering more than 17 million members.  They accept the Bible as their only creed and hold

certain fundamental beliefs to be the teachings of the Holy Scriptures.  The General Conference

of Seventh-day Adventists  ("General Conference") was officially founded in 1863.  In 1903, the

World Headquarters of the General Conference were moved to Washington, D.C., and in 1989 to Silver Spring, Maryland.

35.   Ellen G. White was a prolific author.  At the time of her death, her literary productions consisted of more than 100,000 pages, about half of which were published during her lifetime and half were unpublished during her lifetime.  The works published during her lifetime included dozens of books, thousands of articles and pamphlets.  Her unpublished works (herein the "EGW Protected Works") included approximately 6,000 typewritten manuscript documents consisting of letters and general manuscripts, totaling approximately 35,000 typewritten pages, and approximately 2,000 handwritten letters, documents, diaries and journals, comprising approximately 15,000 typewritten pages.  The EGW Protected Works are the primary focus of this litigation.

36.   In official actions of the General Conference, Ellen G. White has been recognized as having been called in a special manner as the messenger of the Lord.  Her theology and writings are vitally important to the SDA's faith and tenets.

37.   Pursuant to her Last Will and Testament, Ellen G. White created a trust, and initially invested five trustees with authority to hold and administer the copyrights to her writings. Vacancies were filled by the remaining trustees, or, failing that, by the General Conference's Executive Committee.  Ellen G. White's will dedicated the major portion of royalty income from her books to the work of the Trustees.

**The Ellen G. White Estate**

38.   Plaintiff is a California non-stock corporation organized in 1933 by the original trustees of Mrs. White's estate.  Plaintiff's purpose is to carry out and perform the provisions of the trust,

including acting as custodian and copyright owner of all her writings.   In 1992, the Estate registered as a foreign corporation in the state of Maryland.  Since 1938, the Estate has been housed in the headquarters of the General Conference, currently located in Silver Spring, Maryland.

39.  The Estate's primary responsibilities are as follows: (a) possession and control of the copyrights to her writings and the care and promotion of her books in the English language; (b) preparation of works for publication and translation of the works into other languages; and (c) custody of all her body of literary works.

40.  On September 17, 2002, "Ellen G. White" was registered with the United States Patent and Trademark Office ("PTO"), under Registration No. 2620036, for use in connection with "religious and historical publications, namely books, writings, articles, periodicals, manuscripts, letters, diaries, therefor written by or about Ellen G. White" (the "Ellen G. White Registration"). The Ellen G. White Registration became incontestable in 2008 and was renewed on March 27, 2012.

41. On June 18, 1985, "EGW" was registered with the United States Patent and Trademark Office ("PTO"), under Registration No. 1342547, for use in connection with "religious and historical publications, namely books, writings, articles, periodicals, manuscripts, letters, diaries written by or about Ellen G. White" (the "EGW Registration").  The EGW Registration became incontestable in 1990 and was renewed on April 16, 2005.

42. On July 1, 2003, "E.G. White" was registered with the United States Patent and Trademark Office ("PTO"), under Registration No.  2731512, for use in connection with "religious, literary and historical library services; education driven electronic research services

featuring books, writings, articles, periodicals, manuscripts, letters, diaries, tracts, encyclopedias, reference materials and pamphlets written by or about Ellen G White and/or Seventh-day Adventist origin and history, online electronic publishing services, namely, publication of books, writings, articles, periodicals, manuscripts, letters, diaries, tracts, encyclopedias, reference materials and pamphlets written by or about Ellen G. White an/or Seventh-day Adventist origin and history"  (the "E.G. White Registration").  The E.G. White Registration became incontestable in 2008.

43. On September 16, 2008, "Ellen White Visionary For Kids" was registered with the United States Patent and Trademark Office ("PTO"), under Registration No.  3500991, for use in connection with "digital materials, namely, CD-ROMs, downloadable audio files featuring youth-based religious topics, including educational material on Ellen G. White, electronic publication, namely, a youth magazine featuring educational material regarding Ellen G. White and other religious topics recorded on computer media;" and "publication of electronic youth magazine featuring youth-related topics including educational information regarding Ellen G. White" (the "Ellen White Visionary Registration").

44. On February 25, 2003, "White Estate" was registered with the United States Patent and Trademark Office ("PTO"), under Registration No. 2690504 for "religious and historical publications (namely books and pamphlets)," and "religious, literary and historical library services; education driven electronic research services featuring books, writings, articles, periodicals, manuscripts, letters, diaries, tracts, encyclopedias, reference materials and pamphlets written by or about Ellen G. White and/or Seventh-day Adventist origin and history; online electronic publishing services, namely publication of books, writings, articles, periodicals,

manuscripts, letters, diaries, tracts, encyclopedias, reference materials and pamphlets written by

or about Ellen G. White and/or Seventh-day Adventist origin and history; conducting tours of the

White Estate Library, including religious and historical contents thereof (the "White

EstateRegistration").   The White Estate Registration became incontestable in 2008.

45.   Under Section 7(b) of the Lanham Act, 15 U.S.C. §1057(b), the Ellen G. White, EGW,

E.G. White, Ellen White Visionary Registrations and White Estate (collectively "the

Registrations") constitute prima facie evidence of the validity of the trademarks,  the Estate's

ownership of same, and of the Estate's exclusive right to use the trademarks in commerce on or

in connection with the goods specified in the Certificates of Registration.  In addition, all the

Registrations except for Ellen White Visionary Registration, have become incontestable under 15

U.S.C. §1065.  Subject to certain statutory limitations, the Registrations now constitute

conclusive evidence of the validity of the Ellen G. White, EGW, E.G. White, Ellen White

Visionary, and White Estate marks, of the Estate's ownership of same, and of the Plaintiff's

exclusive right to use the trademarks in commerce on or in connection with the goods and

services specified in the Certificates of Registration.

46.   In addition to the primary responsibilities set forth in ¶39, the Estate (a) safeguards and

maintains the records in the custody of the trustees, and the indexes thereto, in such a manner as

to serve the SDA Church; (b) handles the copyrights to the EGW Protected Works; (c) conducts

such research in these works and the related historical materials as may be called for; (d)

responds to questions that may be directed to the Estate in personal interviews and in worldwide

correspondence; (e) assembles, when authorized by the trustees, materials for compilations from

Ellen G. White's writings; (f) fosters, in conjunction with the Spirit of Prophecy Committee, the

ever-widening publication of these writings in various languages and at times make selections or abridgments as called for and authorized; (g) fills assignments in church, institutional, and field visitation as the needs and best interests of the advancing work of the SDA Church require; (h) conducts tours of historical sites of denominational interest; and (i) prepares articles, correspondence lessons, and text materials for special publication.

47.    The Estate's literary productions of special value to the SDA Church include the four-volume *Comprehensive Index to the Writings of Ellen G. White* (1962, 1992); the six-volume facsimile reprints of the Ellen G. White, *Present Truth* and *Review and Herald* articles; the four-volume Ellen G. White *Signs of the Times* articles; the Ellen G. White *Youth's Instructor* articles; the 21 volumes of *Manuscript Releases* (included in the EGW Protected Works that were the subject of Defendant Knudson's hacking); the Periodical Resource Collection volumes; the six-volume biography of Ellen G. White, by A. L. White; *The Published Writings of Ellen G. White on Compact Disc* (CD-ROM), a tool of inestimable value to users of computers; the publication of copies of EGW Protected Works in research locations around the world; the creation of www.egwwritings.org website containing both the writings published during Mrs. White's lifetime and EGW Protected Works in 11 languages; and EGW Writings apps for both iOS and Android devices in 9 languages.

### The Ellen G. White Estate Branch Offices and Research Centers

48.    The Estate maintains three branch office research centers; one at Andrews University, Berrien Springs, Michigan; a second at Loma Linda University, Loma Linda, California; and a third at Oakwood College, Huntsville, Alabama.  These offices contain duplicates of the Ellen G. White documents (including EGW Protected Works) and other historical materials housed at the

General Conference headquarters.  By the 1990s, the Estate set up the Ellen G. White-SDA

Research Centers ("Centers") on the campuses of 19 SDA colleges and universities outside

North America, in such countries as: Argentina, Australia, Brazil, Costa Rica, England, France,

India, Jamaica, Kenya, Korea, Mexico, Nigeria, Philippines, Peru, Puerto Rico, Russia, and

South Africa.  Copies of the EGW Protected Works reside in these Centers.

### Copyrights to Ellen G. White Writings

49.    The Estate is the copyright owner of all writings by Ellen G. White, including those

works unpublished during her lifetime (herein identified as the EGW Protected Works); and

works published by the Plaintiff after 1923.  EGW Protected Works consist of approximately

8,300 documents (roughly 50,000 pages) divided into two categories—letters (written to specific

individuals or groups) and manuscripts (articles, diaries, sermons, etc.) authored by her between

1845 and 1915.   In the decades following her death, the Estate has organized, catalogued, edited,

annotated and preserved her writings.  Originals are held in files in a fire-protected vault and

copies of EGW Protected Works have been disseminated to the numerous Ellen G. White Estate

Archives and Centers located around the world.  The placement of these copies has given

scholars and researchers access to all Ellen G. White's previously unpublished works, and has

allowed the public to obtain copies, subject to the restrictions in research agreements.

Furthermore, 21 volumes of *Manuscript Releases* were published between 1981 and 1993, and a

CD-ROM version of the same is also available.  In addition, to facilitate research, the Estate has

developed special customized web based software that allows for advanced searching of the

digital files they have created.  The Estate has registered with the U.S. Copyright Office the

17

copyrights for EGW Protected Works, as well as customized software for management of the EGW Writings Database.  *See* Exhibit 1.

50.    While all of Ellen White's writings have been published and are available for research, the Estate deems many documents in the Ellen G. White files that were unpublished during her lifetime of such significance that they require these writings to be cared for and used responsibly. Because of this, during the first six decades following her death, policies governing the use and release of materials EGW Protected Works were established.  With the decision to expand public access to the previously unpublished writings, ultimately 21 volumes of *Manuscript Releases* were published and copyrighted by the Estate.   Further, with the dissemination of copies of the EGW Protected Works to Estate Archives in Centers, the restrictive access policies were modified to accommodate the needs of increased research.

51.    The Estate has been working for about a decade toward the further wider release of compilations of the EGW Protected Works.  Plaintiff estimates that more than one million dollars has been devoted to this effort.  The first volume containing scholarly annotated letters and articles is ready to be published.  However, the Estate has been forced to delay its publication plans because of the activities of Defendant Knudson.

### Brendan Paul Knudson

52.    Brendan Paul Knudson styles himself as a "private detective, specializing in theological and historical investigations."  *See* Exhibit 5 at 1.   Starting in 2006, he made repeated visits to the Estate's archive in Australia, demanding copies of EGW Protected Works, and unrestricted access to the Estate's password-protected database.  As part of the Estate's response to Knudson's inquiries, he was given a copy of the Estate's Research Agreement, in

which the Estate set forth its policies regarding copying and use of the materials.  *See* Exhibit 6.

Knudson did not sign the agreement, but rather made further demands over the ensuing years,

continuing to the end of 2011.

### Knudson's Illegally Hacks into the Estate's Website

53.    On January 13, 2012, Knudson, under the alias "GirdedSword," registered his profile

on an Internet forum located at www.hackforums.net ("Hack Forums"), used by computer

hackers with the purpose of communicating, organizing and hiring hackers. *See* Exhibit 7 at 1.

Knudson frequently used the alias "GirdedSword" or "WithGirdedSword" for communication

across the Internet and social media, such as: on Twitter "@withgirdedsword"; on Skype

"withgirdedsword," on his personal blog "With Girded Sword."  *See* Exhibit 5 at 1-5.

54.    After registering on Hack Forums, Knudson engaged in a determined and aggressive

effort to hack into the Estate's technologically protected website.  *Id.* at 2-13.  He requested help,

posting numerous messages on the Hack Forums, all with the intent of recruiting others to help

him access "thousands and thousands" of SDA Prophet Ellen White's "unpublished letters and

manuscripts" [i.e. EGW Protected Works] from an "online" "password protected database"

found at www.egwwritings.org. *Id.*  Some of Knudson's posts were deceptively entitled

"Unpublished Religious Database," *see* Exhibit 8 at 1-3, or "Sensitive Website Information

Download Hack."  *See* Exhibits  8 at 4.

55.    Knudson indicated that his intention was "to perform a public service and  acquire the

unpublished writings of a 'prophet' of a particular religious institution … to put this information

in the hands of the public."  *Id.* Additionally, he wrote, "This is urgent, and I am willing to pay

on acquisition of the information."  *Id.*

56.    Knudson's continuous activity in the Hack Forums shows that he (a) requested help to scan the Estate's website for hacking vulnerabilities; (b) downloaded hacking tutorials to train himself in hacking techniques; (c) personally attempted to break the website's securities by using "Hydra" (a tool used by hackers to login to password-protected websites); and, finally, (d) kept the members of the Hack Forums informed about his progress. *See* Exhibits 7-11.

### Estate's Web Server Logs Establish Numerous Hacking Attempts by Knudson

57.    Numerous web server log entries (a physical trail, determined by IP addresses, left by a visit to the website showing a location from which a visitor is accessing the site) illustrate Knudson's frequent, unauthorized attempts (aided by Defendants John Does 1-20) to break the Plaintiff's website's securities. The attacks took place between February 17, 2012 and April 9, 2012, and originated from different countries, including Armenia and Brazil. *See* Exhibit 12. Specifically, the logs show numerous attempts to inject SQL queries (questions written in database language intended to extract the contents of the database) administrated by hacking software "Havij." *Id.* The purpose of these attempts was to break the website's securities and reveal the restricted content of the Estate's EGW Writings Database. Significantly, the SQL injection inquiries that were contained in the web server logs match exactly the SQL inquires posted on the Hack Forums by Knudson and the others. By the beginning of March 2012, the EGW Writings Database with Plaintiff's staff usernames and passwords was compromised. *See* Exhibit 13.

### Knudson and His Co-Conspirators Circumvented the Estate's Strong Online Technological Protection Measures

58.   Although Knudson successfully broke into the Plaintiff's EGW Writings Database, he was not able to get any further (to acquire and download the actual content) due to the fact that the passwords were protected by yet another level of security – hashing (a cryptographic method to encode a string of text) established by Plaintiff.  Thus, on March 1, 2012, Knudson posted another message on the Hack Forums requesting decryption of several passwords.  *See* Exhibit 9 at 1.  Within a few hours and as a result of his recent post, Knudson received decrypted passwords.  *Id.* at 2.  On the next day, March 2, 2012, Knudson requested a decryption of the password belonging to the Estate's Systems Administrator, Vitaliy Kabachevskyi, hoping to obtain his privileges and access to the entire website's content.  *Id.* at 3. The messages posted by Knudson on the Hack Forums over the next several days indicated that he managed to access the website and copy the content of the EGW Writings Database. *Id.* at 3-6. Specifically, between March 1, 2012 and March 13, 2012, Knudson posted more of the encrypted database content and requested its decryption. *See* Exhibits 9-10. Simultaneously, Knudson continued his own efforts to decrypt the content by means of using hacking techniques, such as: "Bruteforcing" (a strategy intended to decrypt any encrypted data) and "Havij."  Additionally, he admitted on the Hack Forums to be using other hacking tools, e.g. "manual sqli, havij, sqlmap (and linux so [he] could do that), hashcat…" *See* Exhibit 10 at 2.

### Knudson Purchased Domains, Webhosting Plans and Payment Processing Solution from the Co-Defendants to Facilitate an Unlawful Scheme to Sell EGW Protected Works

59.   On or about March 20, 2012, to facilitate unauthorized and unlawful distribution of Plaintiff's copyrighted works via the Internet, Knudson purchased three Domains: www.unpublishedellenwhite.com; www.ellenwhiteletters.com; and

21

www.ellenwhitemanuscripts.com, from WildWestDomains.com, a reseller of Defendant

GoDaddy websites, and a webhosting plan from Defendant HostGator.com. *See* Exhibit 14.

Upon information and belief, to hide his true identity as an owner of the newly registered domain

names, Knudson purchased domain privacy services from Defendant DBP.  Upon information

and belief, Knudson also acquired a webhosting plan from Defendant Webs, uploaded stolen

works to Webs' server, and setup an online shopping cart under the domain name

www.egwletters.webs.com.  Upon information and belief, to enable processing credit card

payments on his online shopping cart, Knudson used a credit card processing payment solution

from Defendant PayPal.  *See* Exhibit 15 at 12-14.

### Knudson is the Owner and Facilitator of an Online Shopping Cart at URL www.egwletters.webs.com, the Website That Illegally Sells Plaintiff's Copyrighted Works

60.  Upon information and belief, although Knudson uses an alias, "SDAnonymous," to hide

his true identify, electronic correspondence from Knudson's Shopping Cart carries either his

name, or the name of his publishing company.  Thus, the initial Shopping Cart's customer

service inquiries and PayPal's purchase acknowledgements carry in an email header or the email

body the name or web address of Knudson's publishing company ("WGS" or With

GirdedSword.com), or his name and his home address, 17 Scarletti Close, Burpengary, Qld,

4505, Australia. *See* Exhibit 15 at 2-3, 6-7, 9, 12, 14

61.  Notably, on or about March 28, 2012, after an employee of SDA Church made a

purchase on Knudson's Website, a shopping cart purchase acknowledgement was received.  This

acknowledgement bore not only the pseudonym SDAnonymous, but also Knudson's first and

last name and his home address in Australia.  These facts, along with the other evidence obtained

by Plaintiff, establishes that Knudson and SDAnonymous are one and the same.  *Id* at 6.

### Knudson Steals SDA Church Members' Email Addresses from Plaintiff's Website and Uses those Email Addresses to Market Stolen EGW Protected Works

62.   Upon information and belief, on April 10, 2011, Knudson sent an email "blast" to over

one thousand email addresses, which addresses he obtained while hacking and downloading the

EGW Writings Database.  These email addresses from Knudson's email blast matched the email

addresses contained in one of the Estate's own database user tables.  This fact further indicates

that Knudson compromised Plaintiff's secure website, and accessed and stole confidential data.

Furthermore, he violated members' privacy by sending, without their knowledge and consent, a

message in which he promotes his new shopping cart. This email "blast" confirmed to the SDA

Church and the Estate that the Plaintiff's copyrighted works had been stolen and were being

illegally distributed online.

### Knudson Illegally Claims Ownership and Authorship of EGW Protected Works

63.   META tags are electronic elements indicating the authorship of a document.  With

respect to the EGW Protected Works marketed by Knudson, the META Tags on the digital files

assert Knudson is author and owner.  This means that he unlawfully changed the authentic author

and owner information on these documents.  Further, he deliberately restricted access to the

documents with a password and reserved to himself the right to copy and publish the EGW

Protected Works.  *See* Exhibit 16 at 1-6.

### The Materials Offered by Knudson Unquestionably Originated from Plaintiff's Database

64.    Due to the fact that the content of the Estate's EGW Writings Database consists of raw HTML (a markup language used to format web pages), it carries uniquely identifiable characters located in specific places.  The materials offered by Knudson via his Shopping Cart have the same uniquely identifiable characters that are located in the same, exact places as the EGW Writings Database.  This fact establishes that Knudson's materials originated exclusively from the EGW Writings Database.  Therefore, it is without question that Knudson is selling documents he secured by hacking into the Plaintiff's EGW Protected Works and stealing them. *See* Exhibits 17-20.

**Knudson's Public Acknowledgement**

65.    In response to an article published in "Adventist Today" on March 27, 2012, regarding the recent publication of Ellen G. White's works, Unpublished Ellen White, a website owned by Knudson, proved his intimate inside working knowledge of the Plaintiff's EGW Writings Database, when he stated that to release the unpublished writings would involve only a "few tweaks" and "some minor adjustments to the Estate's already public website and everything would be available to anyone."  In fact, for months, Knudson and his co-conspirators attempted to break Plaintiff's website's security in order to illegally copy the EGW Protected Works.  *See* Exhibit 21 at 5, 11-12.

**COUNT I**

**UNLAWFUL CIRCUMVENTION OF ACCESS CONTROLS AND TRAFFICKING IN TECHNOLOGY DESIGNED TO CIRCUMVENT ACCESS CONTROLS AND TO COPY AND DISTRIBUTE PLAINTIFF'S COPYRIGHTED WORKS ALL PROHIBITED BY SECTION 1201(a) and (b) OF THE DMCA AGAINST DEFENDANT KNUDSON AND DEFENDANTS JOHN DOES 1-20**

66.    Plaintiff re-alleges and incorporates herein the allegations in Paragraphs 1-65 inclusive.

67.   As described above, Plaintiff is the owner of all rights, title and interest in and to the EGW Protected Works and all Ellen G. White writings still under copyright.  The EGW Protected Works, originally unpublished in Ellen G. White's lifetime, were published by the Plaintiff prior to December 31, 2002.  These copyrighted works are thus protected under 17 U.S.C. §101 et seq. By virtue of technological measures adopted by Plaintiff, access to and copying and distribution of the EGW Protected Works on the Plaintiff's website is limited and controlled.

68.   Defendant Knudson, with the aid and assistance of Defendants John Does 1-20, without authority and intentionally circumvented the technological measures designed to control access to the EGW Protected Works, in violation of Section 1201(a) of the DMCA.

69.   Defendant Knudson, with the aid and assistance of Defendants John Does 1-20, circumvented and bypassed the Plaintiff's website's security, engineered ways to exploit its technological limitations and used the website's functions in an unlawful way to access and copy the EGW Protected Works in violation of Section 1201(b) of the DMCA.

70.   Defendant Knudson, with the aid and assistance of Defendants John Does 1-20, used a highly complex mathematical algorithm to decrypt encrypted passwords.  Without authorization, Defendants Knudson and John Does 1-20 accessed Plaintiff's EGW Writings Database and illegally downloaded the copyrighted protected EGW Protected Works in violation of Sections 1201(a) and (b) of the DMCA.

71.   Defendant Knudson, with the aid and assistance of Defendants John Does 1-20, and by the use of hacking software, by posting notices on Hack Forums to decrypt Plaintiff's encrypted passwords and by encouraging others to assist his and their efforts to bypass Plaintiff's website's

securities, engaged in trafficking in a technology, product, service, device, component or part thereof, all primarily designed for the purpose of circumventing access controls that effectively control access to works protected by Title 17 of the U.S. Code and their copying and distribution.

72.   By virtue of the infringements of Defendant Knudson and Defendants John Does 1-20, Plaintiff has sustained and will continue to sustain substantial injury and loss and damage to its ownership rights in the EGW Protected Works.

73.   Plaintiff is entitled to receive all appropriate injunctive relief including, but not limited to, relief available under 17 U.S.C. §1203(b).

74. Plaintiff is further entitled to recover from Defendant Knudson and Defendants John Does 1-20 the damages it has incurred and will incur, and any gains, profits and advantages obtained by Defendants Knudson and John Does 1-20 as a result of Defendants' willful acts of copyright infringement alleged in this Complaint, including but not limited to such damages and awards as are available under 17 U.S.C. §1203(c).

## COUNT II

### UNLAWFUL ALTERATION OF COPYRIGHT MANAGEMENT INFORMATION IN VIOLATION OF SECTION 1202 OF THE DMCA AGAINST DEFENDANT KNUDSON AND DEFENDANTS JOHN DOES 1-20

75.   Plaintiff re-alleges and incorporates herein the allegations in Paragraphs 1-74, inclusive.

76.    As described above, Plaintiff is the owner of the EGW Protected Works, which contain META Tags and other copyright management information properly designating it as the owner thereof.

77.    Defendant Knudson, with the aid and assistance of Defendants John Does 1-20, knowingly and with the intent to deceive, a) intentionally removed or altered the copyright management information included with the EGW Protected Works identifying the Plaintiff as owner, b) falsely identified himself as the owner of the EGW Protected Works, and c) distributed or imported for distribution copies of the EGW Protected Works, knowing that such action would induce, enable, facilitate or conceal an infringement of Plaintiff's copyright rights in the EGW Protected Works, all in violation of Section 1202 of the DMCA.

78.    By virtue of the infringements of Defendant Knudson and Defendants John Does 1-20, Plaintiff has sustained and will continue to sustain substantial injury and loss and damage to its ownership rights in the EGW Protected Works.

79.    The Plaintiff is entitled to receive all appropriate injunctive relief including, but not limited to, relief available under 17 U.S.C. §1203(b).

80.    Plaintiff is further entitled to recover from Defendant Knudson and Defendants John Does 1-20, the damages it has incurred and will incur, and any gains, profits and advantages obtained by Defendants Knudson and John Does 1-20 as a result of Defendants' willful acts of copyright infringement alleged in this Complaint, including but not limited to such damages and awards as are available under 17 U.S.C. §1203(c).

## COUNT III

## COPYRIGHT INFRINGEMENT AGAINST ALL DEFENDANTS

81.    Plaintiff re-alleges and incorporates herein the allegations in Paragraphs 1-80, inclusive.

82.   As set forth above, Defendant Knudson, with the aid and assistance of Defendants John Does 1-20, hacked into the secure website of Plaintiff, and downloaded, copied and stole EGW Protected Works and other copyrighted and proprietary works.

83.   Defendant Knudson, with the aid and assistance of Defendants Webs, GoDaddy, HostGator.com, DBP and PayPal, arranged for the copying, public distribution and sale of Plaintiff's EGW Protected Works and other copyrighted and proprietary works.  Defendants engaged in direct, contributory and vicarious infringement of thousands of individual and collective copyrighted works of Plaintiff, including but not limited to the Manuscript Releases Volumes 1-21, and approximately 8,300 letters, manuscripts, diary entries, journals, articles and other writings of Ellen G. White, owned by Plaintiff.

84.   The infringements of Plaintiff's copyrights by Defendants Knudson and John Does 1-20 are intentional, willful, wanton and on-going.  Defendants Webs was served with a DMCA Notification on August 7, 2012, and Defendants HostGator.com, GoDaddy and DBP were served with DMCA Notifications on August 8, 2012.  Defendants Webs disabled access to the www.egwletters.webs.com website, and Defendant HostGator.com advised that it removed material, but due to a counter notice from Defendant Knudson, which it considered valid, it would restore the material at the insistence of Defendant Knudson unless a lawsuit was served within 10 business days of August 9, 2010.  The other Defendants did not believe specific action was required of them.

85.   Plaintiff is entitled to the remedies set forth in Chapter 5 of Title 17, including injunctive relief, seizure and destruction of offending copies, and monetary damages, including but not limited to statutory damages for willful infringement.

## COUNT IV

### VIOLATION OF THE CFAA
### AGAINST DEFENDANT KNUDSON AND DEFENDANTS JOHN DOES 1-20

86.   Plaintiff re-alleges and incorporates herein the allegations in Paragraphs 1-85, inclusive.

87.   On information and belief, Defendant Knudson, with the aid and assistance of Defendants John Does 1-20, broke into, caused and encouraged others to break into Plaintiff's protected computer network, services, website and databases.

88.   Following Defendants Knudson's computer attacks, Plaintiff suffered damages and loss in an aggregate of at least $5,000 in value.

89.   To remedy the negative consequences of the attacks, Plaintiff was forced to engage a network security expert, particularly to neutralize the threat, to alter and strengthen the security system and to improve its security measures to prevent further damage. In that regard, Plaintiff had to engage a web developer to investigate the attacks and trace its source.

90. Plaintiff suffered reputational damage due to overall decreased performance of its website, which consequently prevented the authorized users from properly accessing the EGW Writings Database.

91. As a direct result of said violation, Plaintiff has been forced to limit public access to its research services and materials, thereby causing harm to its business and to the public.

92. As a direct result of said violation, Plaintiff has sustained and is likely to continue to sustain monetary damages and irreparable injury to its business, reputation and goodwill.

93. Plaintiffs has no adequate remedy at law.

94. By reason of the foregoing, Defendant Knudson and Defendants John Does 1-20 are liable to Plaintiff for violations under the CFAA, and Plaintiff is entitled to these Defendants' profits, Plaintiff's damages, the costs of the action, plus reasonable attorneys' fees and costs by reason of the willful conduct on the part of these Defendants.  Their willful and illegal conduct renders this an exceptional case within the meaning of 18 U.S.C. § 1030(g).

### COUNT IV

### VIOLATION OF THE SCA
### AGAINST DEFENDANT KNUDSON AND DEFENDANTS JOHN DOES 1-20

95. Plaintiff re-alleges and incorporates herein the allegations in Paragraphs 1-94, inclusive.

96. Defendant Knudson intentionally accessed, without authorization, Plaintiff's computer network, servers, website and databases by which Plaintiff served and communicated with its members.

97. Defendant Knudson, with the assistance of Defendants John Does 1-20, intentionally exceeded the authorization to access Plaintiff's computer network, servers, website and the EGW Writings Database and thereby illegally obtained copyrighted works stored in an electronic version in Plaintiff's system.

98. Defendant Knudson and Defendants John Does 1-20 unlawfully used information obtained in violation of the SCA and stole from Plaintiff's computer network, servers, website and databases, and sent an email "blast" to over one thousand email addresses, without addressees' permission or consent.

99. As a direct result of said violations, Plaintiff has sustained and is likely to continue to sustain monetary damages and irreparable injury to its business, reputation and goodwill.

100. Plaintiff has no adequate remedy at law.

101. By reason of the foregoing, Defendant Knudson and Defendants John Does 1-20 are liable to the Plaintiff for violations under the SCA, and Plaintiff is entitled to these Defendants' profits, Plaintiff's damages, the costs of the action, plus reasonable attorneys' fees by reason of the willfulness of these Defendants' conduct, which willfulness renders this an exceptional case within the meaning of 18 U.S.C. § 2701.

## COUNT V

### TRADEMARK INFRINGEMENT UNDER THE ACPA
### AGAINST DEFENDANT KNUDSON AND DEFENDANTS JOHN DOES 1-20

102. Plaintiff re-alleges and incorporates herein the allegations in Paragraphs 1-101, inclusive.

103. As described above, Plaintiff owns all rights, title and interest in and to the Estate's Trademarks, including the Registrations.

104. Plaintiff's use of the Estate's Trademarks, including the Registrations, in commerce has been substantially exclusive, continuous, and long standing.  The Estate's Trademarks, including the Registrations, are distinctive and representative of the extensive goodwill built up by Plaintiff.

105. Defendant Knudson and Defendants John Does 1-20 intentionally and unlawfully adopted the domain names www.Unpublished**EllenWhite**.com; www.**EllenWhite**Letters.com; and www.**EllenWhite**Manuscripts.com, which are identical to or confusingly similar to Plaintiff's distinctive Estate's Trademarks, including the Registrations, to take advantage of, create confusion, or dilute the value of its Trademarks. Defendant Knudson and Defendants John

Does 1-20, while adopting the Knudson Domains, acted in bad faith knowing full well that the Knudson Domains contained Plaintiff's Estate's Trademarks, including the Registrations and engaged in anticybersquatting activities under the ACPA.

106.  By reason of the foregoing, Defendants are liable to the Plaintiff for cybersquatting and related infringements under the ACPA, and Plaintiff is entitled to all monetary remedies and injunctive relief allowed by law.

## COUNT VI
## TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT
## AGAINST ALL DEFENDANTS

107.  Plaintiff re-alleges and incorporates herein the allegations in Paragraphs 1-106, inclusive.

108.  As described above, Plaintiff owns all rights, title and interest in and to the Estate's Trademarks, including the Registrations.

109.  Plaintiff's use of the Estate's Trademarks, including the Registrations, in commerce has been substantially exclusive, continuous and long standing.  The Estate's Trademarks, including the Registrations, are distinctive and are representative of the extensive goodwill built up by Plaintiff.  Upon information and belief, Defendant Knudson had actual notice of the Registrations,  because such notice is given throughout Plaintiff's website.  Particularly, one or more of the Estate's Trademarks, including the Registrations, appear on each of Plaintiff's website pages on headers, footers and logos. Defendant Knudson had actual notice of the Registrations, because he repeatedly visited the Plaintiff's website and finally bypassed its security measures and copied its contents.

110. By using the Estate's Trademarks, including the Registrations, as a part of Knudson Domains and and Knudson's Website and in connection with the copying, distribution and sale of the EGW Protected Works, Defendants have, under Section 32(1)(a) and (b) of the Lanham Act, 15 U.S.C. §1114(1)(a),(b), blatantly suggested affiliation with the Plaintiff as trademark owner, thus infringing upon the Plaintiff's rights to the Estate's Trademarks, including the Registrations.

111. Upon information and belief, Defendants' trademark infringement has caused, and will continue to cause, confusion, mistake, and/or deception, among SDA Church members, other potential readers of Ellen G. White's works, and the public, as to the source or origin of Defendants' products, services and/or the sources or origins of Plaintiff's products and services.

112. As a direct result of said trademark infringement, Plaintiff has sustained and is likely to continue to sustain, monetary damages and irreparable injury to their businesses, reputation, and goodwill.

113. Plaintiff has no adequate remedy at law.

114. By reason of the foregoing, Defendants are liable to the Plaintiff for trademark infringement under the Lanham Act, and Plaintiff is entitled to Defendants' profits, Plaintiff's damages, the costs of the action, plus reasonable attorneys fees by reason of the willfulness of Defendants' conduct, which willfulness renders this an exceptional case within the meaning of Section 35(a) of the Lanham Act, 15 U.S.C. 1117(a).

## COUNT VII
## TRADEMARK DILUTION IN VIOLATION OF 15 U.S.C. §1125(c)
## AGAISNT ALL DEFENDANTS

115. Plaintiff realleges and incorporates herein the allegations in Paragraph 1-114, inclusive.

116. The Estate's Trademarks, including the Registrations, are symbolic of the extensive goodwill and consumer recognition built up by the Plaintiff through years of advertising, promotion, good acts and sales. Plaintiff has also used the Estate's Trademarks, including the Registrations, in connection with its publications to the extent that the public has come to associate the marks exclusively with Plaintiff as an indication that the goods offered under the Estate's Trademarks, including the Registrations, originated with Plaintiff.

117. As a result of its prominent and continuous use, Plaintiff's distinctive Estate's Trademarks, including the Registrations, have become famous across the nation within meaning of 15 U.S.C. §1125(c).

118. Defendants' use of Plaintiff's famous Estate's Trademarks, including the Registrations, is meant for a commercial purpose.

119. Defendants' use of Plaintiff's famous Estate's Trademarks, including the Registrations, has caused, and is likely to continue to cause, dilution by blurring and/or by tarnishing of the distinctive qualities of Plaintiff's Estate's Trademarks, including the Registrations, and/or do harm to the reputation of Plaintiff's Estate's Trademarks, including the Registrations.

120. Defendants are liable for the dilution of Plaintiff's  Estate's Trademarks, including the Registrations, because they directed, controlled, ratified and participated in the unlawful activity through Knudson Website and Knudson Domains, and other activities described herein.

121. By reason of the foregoing, Defendants are liable to the Plaintiff for trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. §1143(c), and the other Defendants are liable for contributing thereto. Plaintiff is, therefore, entitled to preliminary and permanent injunctive relief under Section 34(a) of the Lanham Act, 15 U.S.C. §1116(a); monetary damages, profits,

and costs under Section 35(a) of the Lanham Act, 15 U.S.C. §1117(a); and also to the remedies set forth in 15 U.S.C. §1118.

122.  Plaintiff is entitled to treble damages and increased profits, plus attorneys' fees, by reason of the willfulness of Defendants' infringement, which willfulness renders this an exceptional case within the meaning of Section 35(a) of the Lanham Act, 15 U.S.C. §1117(a).

123.  In view of the willfulness of Defendants' infringement, Plaintiff is also entitled under Section 36 of the Lanham Act, 15 U.S.C. §1118 to a court order providing that all websites, including Knudson's Website and Knudson Domains, all advertising, and promotional matter bearing the Estate's Trademarks, including the Registrations, along with all means of making such advertising, and promotional matter, be estopped immediately.

## COUNT VIII
## TRADEMARK INFRINGEMENT UNDER COMMON LAW
## AGAINST ALL DEFENDANTS

124.  Plaintiff realleges and incorporates herein the allegations in Paragraphs 1-123, inclusive.

125.  As described above, Plaintiff owns all rights, title and interest in and to the Estate's Trademarks.

126.  As described above, the Estate's Trademarks are distinctive and Plaintiff has built up valuable good will in the Estate's Trademarks.

127.  Defendants use of the Estate's Trademarks infringes upon Plaintiff's rights therein which has and will continue to cause confusion, mistake, or misunderstanding among consumers as to the source and origin of Defendants' copies of EGW Protected Works and other copyrighted writings of Ellen G. White owned by Plaintiff.

128. Defendants' conduct deceived or is likely to deceive, and caused or is likely to cause, confusion or mistake among actual and prospective consumers of the Plaintiff's products by passing off Defendants' products as being sponsored or otherwise approved by or connected with the Plaintiff.

129. As a direct and proximate result of Defendants' infringements of Plaintiff's common law trademark rights under the State of Maryland and other common law, Plaintiff has sustained and is likely to continue to sustain monetary damages and irreparable damage and injury to its business, reputation and goodwill.

130. Plaintiff has no adequate remedy at law.

131. By reason of the foregoing acts, Defendants are liable to Plaintiff for trademark infringement and Plaintiff is therefore entitled to preliminary and permanent injunctive relief and monetary damages and including but not limited to attorneys fees and costs.

132. Plaintiff is entitled to exemplary and punitive damages by reason of Defendant's willful, reckless, deliberate and intentional conduct.

**COUNT IX**
**UNJUST ENRICHMENT**
**AGAINST ALL DEFENDANTS**

133. Plaintiff re-alleges and incorporates herein the allegations in Paragraphs 1-132, inclusive.

134. Plaintiff has been denied financial compensation in connection with Defendants' sale of stolen works of EGW Protected Works and other copyrighted writings of Ellen G. White owned by Plaintiff.  Defendants have been wrongly enriched by their use of the Estate's Trademarks, including the Registrations, in connection with their sale of stolen Ellen G. White's manuscripts

and letters. The circumstances are such that equity and good conscience require the Defendants to make restitution in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against each Defendant as follows:

A.  Issuance of a Temporary, Preliminary and Permanent Injunction enjoining and restraining Defendants, their officers, directors, shareholders, agents, employees, and attorneys and all those acting in concert with them from:

   1.  Reproducing, publicly distributing, publicly displaying, and preparing any derivative work based on EGW Protected Works and any copyrighted work owned by Plaintiff, in any medium, including but not limited to print and online;

   2.  Producing, marketing, selling, distributing any product whose packaging contains any portion of Plaintiffs' Work;

   3.  Using Plaintiff's Estate's Trademarks, including the Registrations, or any colorable imitation thereof.

B.  Ordering Defendants to file with this Court and serve upon Plaintiff within 20 days after service of such injunction, an affidavit, sworn to under penalty of perjury, setting forth in detail the manner and form in which Defendants have complied with such injunctions.

C.  Ordering an accounting of all revenues received by each Defendant as a result of its unlawful conduct.

D.  Awarding Plaintiff: 1) Defendants' profits realized as a result of the copyright and trademark infringements, trademark counterfeiting, false advertising, unfair competition, unjust enrichment and/or each of the Defendants' deceptive practices, or in the Court's discretion, such sum as the Court finds to be just, equitable and proper; 2) actual damages sustained by Plaintiff or such other amount as the Court may deem just; and 3) the any other costs of this action.

E.  Awarding Plaintiff increased damages and profits, and reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a)-(c) and damages and reasonable attorneys fees pursuant to 17 U.S.C. §§504-505.

F.  Awarding Plaintiff the relief set forth in 15 U.S.C. §1118.

G.  Awarding Plaintiff prejudgment and post-judgment interest on any monetary award in this action.

H.  Granting such other and further relief as to this Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all claims for which there is a right to trial.

Dated: August 16, 2012

Respectfully Submitted,
LUTZKER & LUTZKER LLLP


By: __/arnoldpluzker/_____
Arnold P. Lutzker (USDC MD NO. 29660)
Susan J. Lutzker (USDC MD No. 29661)
Allison L. Rapp (USDC MD No. 28930)
Jeannette M. Carmadella (USDC MD No. 29648)
LUTZKER & LUTZKER LLP

1233 20th Street, NW, Suite 703
Washington, DC 20036
Phone: (202) 408-7600 Ext. 4
Fax: (202) 408-7677

arnie@lutzker.com
susan@lutzker.com
allison @lutzker.com
jeannette@lutzker.com

***Attorneys for Plaintiffs***